IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **4:15 CR 00224 BSM** |
| | ) | |
| **RICHARD DUANE JOHNS, et al.** | ) | |

### DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS

Comes now Richard Duane Johns, through his attorneys, Paul James and Bud Cummins, and for his Reply to Response to Motion to Suppress, herein states:

The government concedes any question of this defendant's standing to challenge the PMP warrant, crediting previous holdings that both a patient and a practitioner have a substantive expectation of privacy in data like that collected in the PMP. To establish a legitimate expectation of privacy, the Defendants must demonstrate: (1) a subjective expectation of privacy; and (2) that this expectation is one that society is prepared to recognize as objectively reasonable. *United States v. Green*, 275 F.3d 694, 699 (citing *United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995)).

It is noted that the government offered abundant new facts, previously unknown to this Court or defendant, and more importantly, to the magistrate who issued the PMP warrant. For example, on page two of the response, it is reported that "Norris had given Jones one of the prescription bottles obtained by Norris from Dr. Johns. Jones knew Norris to be "hooked" on oxycodone…." Also, "Det. Eifling was raised in Lonoke County and knew Jones from the community. Det. Eifling was aware that Jones and Norris were brothers and that they had a very close relationship. Jones disclosed to Det. Eifling that Norris had told him details about his addiction and his participation with David Scroggins in fraudulently obtaining prescriptions for

oxycodone."

Note that nothing said here changes the fact that Eric Jones's statements to the detective were hearsay. There is still no information indicating that Jones had previously provided accurate information to Det. Eifling. Nothing here constitutes corroboration. Nothing suggests that Dr. Johns had committed any crime at all. And even if it did indicate so, none of this information appeared in the affidavit and no explanation is offered about why it didn't appear there.

On page three of the government's response, information is provided describing evidence allegedly found by Det. Eifling in two telephones. None of it mentions Dr. Johns. None of it appeared in police reports. Certainly none of it appeared in the affidavit at issue here. Hearing about it now for the first time in the eleventh hour certainly casts a reasonable doubt regarding the credibility of that information.

Half of page three and all of page four of the government's response is devoted to events that post dated the affidavit and search warrant and are therefore irrelevant. The information is included as part of an effort to start salvaging this case. Det. Eifling found a person in the PMP data who later became CI 1. But now it is implied that he had some independent knowledge of this person as part of an unrelated stolen vehicle investigation. The suggestion seems to be that erhaps Det. Eifling would have developed that person into an informant even without accessing the PMP data. This is nothing more than a desperate attempt to salvage a fatally flawed prosecution. The inclusion of this tale is a clear signal of the government's recognition regarding the warrant's defects. But this "alternate strategy" must fail.For an "independent source" theory to apply here, one must suppose that Det. Eifling would have canvassed persons involved in an unrelated a stolen vehicle investigation in hopes of tripping up evidence about a local ring of opioid addicts, an absurd suggestion.

The government cites *Cundiff v. United States* regarding the sufficiency of "eyewitness" knowledge. *United States v. Deffenbaugh*, *United States v. McKinney*, and *Clay v. Conlee* are cited in support of the reliability of "information supplied by the victim of a crime." However Eric Jones was neither an eyewitness nor a crime victim. The government cites *United States v. Dan Thanh Nguyen* reportedly because it includes authorities for the situations where "information in an affidavit for a warrant comes from a citizen or victim….", however, the words "citizen" and "victim" do not seem to appear in that opinion.

That case does properly set out the basic law in question: "[p]robable cause may be found in hearsay statements from reliable persons; in hearsay statements from confidential informants corroborated by independent investigation; or in observations made by trained law enforcement officers." It also properly noted that "[i]n determining whether probable cause existed for the warrant, the Court may not consider facts outside of the affidavit." But it does not somehow declare "citizens" or "victims" to fall outside the constitutional requirement that the affiant must recite facts demonstrating the reliability of the hearsay informant based on previous experience, or must point to evidence which corroborates the hearsay information. Here, the affiant Det. Eifling, did neither. *United States v. Nguyen*, 2006 WL 3486993, 2006 U.S. Dist. LEXIS 87774 (D. Minn. Dec. 4, 2006).

The government, on page eight, lists the following in support of a finding of probable cause:

1. "Statements from Marissa Scroggins" (contradicted Eric Jones and did not implicate the defendant in any criminal conduct);

2. "Statements of Eric Jones" (hearsay witness whose reliability is not mentioned and who did not implicate the defendant in any criminal conduct); and

3. "A review of telephone message seized" (affidavit is 100% silent as to what

information was found).

The affidavit suggests that Eric Jones knew that David Scroggins was paying Curtis Norris to obtain prescriptions from Dr. Johns.  Setting aside the fact that Eric Jones's statement was hearsay, it does not implicate Dr. Johns in criminal conduct.  If David Scroggins was alleged to have paid Curtis Norris to rob a bank, that allegation would not implicate the bank in criminal conduct.  There is simply no information about Dr. Johns's knowledge or intent.

The government curiously suggests that as a sibling Jones "reasonably would have known whether Norris had the neck and back injuries reported by Marissa Scroggins.  It is difficult to know the basis for this conclusion.  Based on no other facts about their relationship, the Court is asked to assume that this person (who inexplicably has a different surname), automatically knew as much or more about Curtis Norris's personal medical condition as Marisa Scroggins, the woman he was living with.  Even if this bald assertion was persuasive, that information was not contained anywhere within the four corners of the affidavit.

The government says that Jones described to the detective the amount David Scroggins was paying Norris for prescriptions and this should "add to the reliability of his statements."  The government is "reaching" for corroboration again especially in light of the fact that the issuing magistrate did not have any information telling him whether the dollar figures suggested by Jones were accurate.

The strongest assertion by the government promoting the sufficiency of the affidavit is found on page eleven, "[P]robable cause can be found from the totality of the information in the affidavit."  The government then repeats vague references to the statements of Jones, Marissa Scroggins and also to the phone search.  But an uncorroborated hearsay statement, plus a conflicting eyewitness statement containing no corroboration of the hearsay statement, added to absolutely no

information about a phone search equals zero whether in pieces or in the sum of the parts.

It is telling that the government asserts "[t]he totality of the affidavit provided probable cause to believe that Norris was illicitly using 30 mg oxycodone, and that Norris and David Scroggins were engaging in fraud or deception to obtain these prescriptions, *either with or without the knowledge of Dr. Johns*." (italics added). Marissa Scroggins said nothing about "illicit use" so it must have come from Jones. That again shows Jones's statement is not corroborated anywhere in the affidavit because the information from the phones is not described in any form or fashion.

But most important is the government's use of the phrase "with or without the knowledge of Dr. Johns." By saying this, the government freely admits that there is no allegation of criminal conduct by Dr. Johns in the affidavit. The notion of probable cause includes the idea that the evidence makes one thing more likely than another. Only two possibilities existed about Dr. Johns from the beginning of time. He either knew about prescription fraud, or he didn't. After reading the affidavit in question, the magistrate was left in precisely same position regarding the involvement of Dr. Johns. He either knew or he didn't. Nothing in the affidavit reasonably leads the reader closer to either result. In fact, on page fifteen the government concedes that "the participation of Dr. Johns was undetermined." The only reasonable interpretation of that statement is that there was no probable cause at that time to implicate him in any crime.

On page twelve the government seems to double back on their previous concession that Dr. Johns had a reasonable expectation of privacy by questioning the *extent* of his privacy interest. But there is no sliding scale under the Fourth Amendment when it comes to the expectation of privacy. If a citizen has an expectation of privacy, they are afforded the full protection of the Fourth Amendment. There is no intermediate level of protection where the government only needs a little probable cause because the citizen only had a mild expectation of privacy. By arguing about the

level of the defendant's expectation of privacy, the government seeks to question his standing—an issue already conceded. None of the cases cited by the government regarding privacy interests change the law of probable cause, or the constitutional requirement of specificity.

Disturbingly, the government asserts on page fifteen that the PMP warrant requested private records with "specificity." The government claimed to be investigating a ring of opioid addicts, but asked for a practicing physician's entire record of prescriptions for an eleven month period. This included all the prescriptions for every patient. The request was in no way limited to opioids or even to medications related to opioids. The evidence will show that the confidential and highly private medical records of over five hundred patients who were NOT prescribed opioids or any related medications were examined by government agents. These irrelevant records represented the majority of the data seized. It included identifying information and medications which in many cases readily identified the private afflictions of each patient because of the known uses for that medication. This is a blatantly overbroad warrant, particularly absent any probable cause that the doctor targeted was involved in any illegality.

The government insults the entire spirit of Fourth Amendment protection by suggesting that "Dr. Johns' PMP records may just as easily have exculpated as inculpated him in the crime." This is no justification for an illegal search. In fact, the rejection of that philosophy underlies the entire purpose for having a Fourth Amendment to begin with. The notion that citizens should not object to a search if they have nothing to hide has long been rejected by American jurisprudence.

The government argues that the Arkansas state rule of criminal procedure expressly requiring corroboration of a hearsay statement is irrelevant in determining whether the judge wholly abandoned his judicial role. This might be true if the state rule expanded the federal constitutional rule. But here, the state rule in question specifically restates the federal constitutional requirement.

With no citation to authority, the government asserts that "background knowledge" of Det. Eifling can be considered by the court in determining whether he believed the warrant to be valid and therefore executed in good faith.  Applied here, that would amount to a conclusion that the detective acted in good faith when he executed a warrant based on his own affidavit which failed to meet the constitutional requirements of probable cause and specificity because he personally chose to leave that information out of the affidavit.  The good faith exception is not designed to reward law enforcement for relying on its own mistakes.

The government misunderstands the defendant's challenge to the constitutionality of the PMP statute.  The statute arguably unconstitutionally invades the privacy of patients and doctors. Unlike the situation previously analyzed in *Whalen v. Roe*, the threat is not theoretical.  The constitutional injury happened here. All the arguments raised in *Whalen* merit reexamination here now that an atrocity has occurred.  But however the Court views that issue, there are separate and distinct issues regarding this particular case.

The main constitutional problem in this case is a simple issue of procedural due process.  It is impossible for the state to create a database that is only accessible to the government to investigate, indict and convict, but is not <u>accessible</u> to the defendant for the purposes of defense. That is exactly the case here.  This Court previously quashed defendant's subpoena seeking relevant PMP records in a defined parameter almost identical to the governments.

If the defendant cannot access these records for the purpose of defense, then their use by the government must violate procedural due process.  Even terrorists can gain relevant information from various sources classified as Top Secret or higher to comply with the requirements of procedural due process. See e.g., *In re Terrorist Bombings of U.S. Embassies in E. Afr. v. Odeh*, 552 F.3d 93 (2d Cir. N.Y. 2008).  Surely any state PMP statute that provides one-sided access to highly

confidential medical records is a violation of procedural due process protection. Every defendant is entitled to access information relevant and material to his own defense. Fed. R. Crim. P. 16(a). The government may persist in blocking the defendant's access to the PMP data relevant and material to his defense, or the government may proceed with a prosecution using that data, but it cannot do both (any more than a government can prosecute a terrorist using classified information and preclude the defendant's access to classified information for defense).

The affidavit for the PMP warrant lacks sufficient probable cause. It relies entirely on hearsay allegations made by Eric Jones. It is not corroborated by Marissa Scroggins's statement and is in fact contradicted by parts of her statement. Neither implicated Dr. Johns in criminal conduct. There is no additional information offered from the search of telephones.

The warrants are overbroad and lack specificity. At best, though he did not say so within the four corners of his affidavit, the investigator had information regarding a handful of opioid addicts. The focus of the investigation was clearly opioids. He arguably could have searched their individual PMP records for opioid prescriptions. But he had no basis whatsoever to ask for Dr. Johns's prescriptions. And he certainly had no basis to ask for Dr. Johns's non-opioid prescriptions.

It is impossible to constitutionally prosecute a defendant using information obtained from a database while flatly denying him access to the same database to look for relevant, material, or exculpatory evidence.

The good faith exception cannot apply here where the information contained in the affidavit was so scant, and so silent regarding any allegations against the defendant. It amounted to no evidence at all regarding Dr. Johns and by issuing it the magistrate wholly abdicated his responsibilities. Applying the good faith exception here would reward the very conduct these rules are meant to deter.

The defendant respectfully contends that the issuance and execution of the PMP warrant should be declared unconstitutional. All information resulting from its use should be excluded from this case.

                                       Respectfully submitted,

                                       DEFENDANT RICHARD DUANE JOHNS

By: /s/ Bud Cummins
     Bud Cummins (Ark. Bar No. 89010)
     Law Offices of Bud Cummins PLC
     1818 North Taylor, Suite 301
     Little Rock, AR 72207
     Telephone: (501) 831-6125
     E-Mail: bud@budcumminslaw.com

     and

     /s/ Paul J. James
     Paul J. James (Ark. Bar No. 83091)
     James, Carter & Priebe, LLP
     500 Broadway, Suite 400
     Little Rock, AR 72201
     Telephone: (501) 372-1414
     Facsimile: (501) 372-1659
     E-Mail: pjj@jamescarterlaw.com

     Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

   I, Bud Cummins, do hereby certify that on this 23rd day of September 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to all attorneys of record.

                 /s/ Bud Cummins
                 BUD CUMMINS